```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 16, 2010
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                              :
DARREN ROBERTS,                               :
                                              :
                         Plaintiff,           :    09 Civ. 1968 (PAC)
                                              :
            - against -                       :    MEMORANDUM
                                              :    OPINION & ORDER
WACHOVIA BANK, N.A. and T.D. BANK, N.A.,      :
                                              :
                         Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff Darren Roberts seeks to recover the proceeds of two checks, totaling $85,000, from Defendants Wachovia Bank, N.A. ("Wachovia") and T.D. Bank N.A. ("T.D. Bank"). Plaintiff made the checks in question payable to "Michael Howard," but Howard was in fact a convicted felon named Michael Howard Clott ("Clott"). Upon receiving the checks, Clott allegedly altered the payee's name by adding "Clott" after "Michael Howard." Clott then endorsed the checks and deposited them into his account at Wachovia. Wachovia presented the altered checks to T.D. Bank's predecessor, Commerce Bank N.A. ("Commerce"), for payment. Commerce, in turn, accepted the altered checks and debited $85,000 from Plaintiff's account. Clott, who is not a party to this action, allegedly misappropriated the $85,000.

      Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. They claim the benefit of the "intended payee defense": Plaintiff intended Clott to receive the proceeds of the two checks, and he did. Plaintiff argues, however, that the so-called "intended payee defense" is applicable only when the drawer of an improperly paid check does not suffer a loss. Since the Plaintiff's Complaint alleges a loss, the intended payee defense cannot apply.

1

For the reasons that follow, Defendants' motion for judgment on the pleadings is DENIED.

**Background**

**I. Facts**[1]

The facts alleged in the Complaint assert that Clott told Plaintiff that his name was Michael Howard. (Compl. ¶ 10). Plaintiff was unaware that Howard was in fact Michael Howard Clott, a felon with multiple mortgage fraud convictions. (Id.) In late February, 2008, Clott told Plaintiff that he had advanced funds to Chad Adler ("Adler"), Plaintiff's friend and business associate, for the purchase of a defaulted mortgage note. (Id. ¶ 11). Clott said that the note was secured by a mortgage on an apartment in Margate, New Jersey. (Id.)

In the weeks following his discussion with Clott about Adler's debt, Plaintiff drew two checks on his checking account at Commerce – one for $80,000 and the other for $5,000 – and gave them to Clott. (Id. ¶¶ 9, 11, 14.) Both the $80,000 check and the $5,000 check were made payable to the order of "Michael" or "Mike Howard." (Id. ¶¶ 11, 14.) According to Plaintiff, he drew both checks at Clott's request, and based on Clott's representation that the money would be used to partially repay Adler's debt. (Id.)

After receiving the checks, Clott allegedly altered the payee's name by adding "Clott" after "Michael Howard" and "Mike Howard." (Id. ¶¶ 12, 15.) The alterations, according to the Complaint, were "clearly apparent." (Id. ¶ 17.) Clott endorsed the altered checks to Wachovia, and Wachovia in turn presented the checks to Commerce for payment. (Id. ¶¶ 12-13, 15-16.) Commerce accepted both checks and debited a total

---

[1] The facts are taken from the Complaint and accepted as true.

2

$85,000 from Plaintiff's account. (Id. ¶¶ 13, 16.) The funds were then transmitted to Wachovia and deposited into Clott's account. (Id.)

At some point, Plaintiff discovered Clott's true identity. He also discovered that Clott never lent Adler money to purchase a defaulted mortgage note. (Id. ¶ 18). It was a swindle, plain and simple; Clott had misappropriated the $85,000. (Id.) Thus, Plaintiff alleges that he "was fraudulently induced to draw and deliver his $80,000 and $5,000 checks to Clott." (Id.) After discovering the fraud, Plaintiff and Alder entered a judgment by confession against Clott in Westchester County Supreme Court for $539,675. (Id. ¶ 19.)

**II. Procedural History**

Plaintiff commenced this action on March 4, 2009. He claims (rather cryptically) that due to Clott's fraud "in obtaining . . . [the] $80,000 and $5,000 checks," Plaintiff has suffered a loss of $85,000 and "is entitled to rescind Clotts' [sic] and Wachovia's negotiation of those checks and to the proceeds thereof and Commerce's acceptance and honor of these checks and charges to his account therefore." (Id. ¶ 20). Plaintiff seeks to recover $85,000, in addition to costs and attorneys' fees.

In a joint Answer filed on May 1, 2009, Defendants deny the allegations in the Complaint, raise thirty-two affirmative defenses, and jointly move for judgment on the pleadings on October 26, 2009. The motion was fully briefed on November 20, 2009.[2]

---

[2] The action, which was initially assigned to Judge William Connor, was reassigned to Judge Denny Chin on July 24, 2009. Upon Judge Chin's ascension to the Court of Appeals, the action was reassigned to the undersigned on May 12, 2010.

**Discussion**

**III. Motion for Judgment on the Pleadings Standard**

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standard as a Rule 12(b)(6) motion to dismiss. See Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). All factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the nonmoving party. See Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

**IV. Altered Checks**

A drawee bank (the drawer's bank; here, T.D. Bank, the successor to Commerce Bank, N.A.) "stands in a debtor-creditor relationship to its customer and may make payment on checks drawn against its customer's account only as directed by the latter." Kosic v. Marine Midland Bank, 430 N.Y.S.2d 175, 177 (N.Y. App. Div. 4th Dep't 1980).[3] Section 4-401 of the New York Uniform Commercial Code ("U.C.C.") authorizes a drawee bank "to charge its customer's account with those items that are

---

[3] Both parties rely principally on New York law in support of their respective positions, and apparently agree that New York law applies. The Court accepts New York law as controlling. See Am. Fuel Corp v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997); Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp. 2d 514, 526 (S.D.N.Y. 2001).

properly payable and, by negative implication, requires the drawee bank to refrain from charging the customer's account only for those items not properly payable." Davis Auction House, Inc. v. Ontario Nat'l Bank, 609 N.Y.S.2d 707, 708-09 (N.Y. App. Div. 4th Dep't 1994); see also N.Y. U.C.C. § 4-401.  The U.C.C. imposes a form of "strict liability on a bank that charges against its customer's account any 'item' that is not 'properly payable.'" Montreal v. Fleet Bank, 735 N.E.2d 880, 881 (N.Y. 2000) (citing N.Y. U.C.C. § 4-401); see also 2 James J. White & Robert S. Summers, Uniform Commercial Code § 21-3 (5th ed. 2009) ("if a court finds that an item is properly payable, the bank is entitled to charge the customer's account; conversely, if a court finds that an item is not properly payable, the bank may not charge the customer's account, and if it has done so, it must recredit the account.").  When a check is "materially altered by changing the name of the payee . . . [the check is] not 'properly payable' and the . . . [drawer's account can] not be charged for the amount of the check." Biltmore Assocs v. Marine Midland Bank, N.A., 578 N.Y.S.2d 798, 799 (N.Y. App. Div. 4th Dep't 1991) (citing N.Y. U.C.C. § 3-407(1)); see also CNA Holdings, Inc. v. Citibank, N.A., 782 N.Y.S.2d 15, 15-16 (N.Y. App. Div. 1st Dep't 2004) (check "materially altered to change the payee's name" is not properly payable).

As a general rule, the drawer of an improperly paid check has no claim against the depository bank (the payee's bank; here, Wachovia).  See generally Underpinning & Foundation Constructors, Inc. v. Chase Manhattan Bank, N.A., 386 N.E.2d 1319 (N.Y. 1979).  The rule is an off-shoot of the debtor-creditor relationship between a drawee bank and its customers:

> [T]he relation between a bank and its depositor is that of a debtor and creditor, not of agent and principal.  The money deposited becomes part of the bank's general funds, and it impliedly contracts to pay the depositor's checks . . . to the amount of his credit, but in discharging its implied

>  obligation it pays its own money as a debtor, not its depositor's money as
>  agent.  Consequently, in those cases where the drawee bank charges its
>  customer's account without authorization . . . the monies paid to the
>  depository bank are deemed to have come from the drawee bank's own
>  funds, and are the property of the drawee bank and not the drawer.  No
>  cause of action lies in favor of the drawer against the depository bank in
>  such a situation, as the depository bank has not dealt with any valuable
>  property of the drawer.

Kings Premium Service Corp. v. Manufacturers Hanover Trust Co., 496 N.Y.S.2d 524, 536 (N.Y. App. Div. 2d Dep't 1985) (internal citations and quotation marks omitted); see also Crick v. HSBC Bank USA, 775 N.Y.S.2d 497, 500 (N.Y. Civ. Ct. Kings Cnty. 2004).

There is, however, an exception to the general rule which applies "in the 'comparatively rare instances' where the depository bank acted wrongly in accepting the check, and the drawee bank acted properly in charging the customer's account."  Kings Premium, 496 N.Y.S.2d at 527 (quoting Underpinning, 386 N.E.2d at 1323).  The exception recognizes that, when despite "any irregularity in the check[,] [the check] is nonetheless effective against the drawer so as to render the check 'properly payable', then the drawer's funds are 'in play', and the drawer may sue the depository that has acted wrongfully."  Crick, 775 N.Y.S.2d at 537; see also Underpinning, 386 N.E.2d at 466.

While the drawer is typically precluded from suing the depository bank, the drawee bank is not.  A drawee bank may "assert claims 'upstream'[4] against the presenting bank, a collecting bank, and the depository bank for the loss associated with the altered check.  In addition, a drawee/payor bank may bring a breach of warranty action against any party who presented the altered check."  J. Walter Thompson, U.S.A., Inc. v. First BankAmericano, 518 F.3d 128, 133 (2d Cir. 2008).  In the majority of cases,

---

[4] Professors White and Summers explain that "[i]n theory each check flows like a stream from the drawer to the payee to the depository bank and so on down to the drawee bank."  White & Summers, supra, § 18-1. Thus, a drawer suing a drawee bank sues "downstream."  Id.  A drawee bank suing a depository bank sues "upstream."  Id.

6

"[t]hese warranty actions will continue up the collection chain to the party who took from the [wrongdoer] or the [wrongdoer] himself." Id. (quoting Perini Corp. v. First Nat'l Bank, 553 F.2d 398, 404 (5th Cir. 1977)).

Defendants do not quarrel over whether the drawee bank (T.D. Bank/Commerce Bank, N.A.) or the depository bank (Wachovia) is directly liable to the drawer (Plaintiff). Instead, they urge that neither is liable based on the "intended payee defense." According to Defendants, the defense is simple of application: if the intended payee of a check receives the check's proceeds, the drawer of the check cannot recover against a bank for improper payment. (Mem. in Supp. at 4-7). But the intended payee defense is more subtle than that. Instead, the defense is based on principles of equity and causation which, under the circumstances, make dismissal of this action on the pleadings inappropriate.

**V. Intended Payee Defense in New York**

While courts from other jurisdictions refer to the "intended payee defense," see, e.g., Ambassador Fin. Servs, Inc. v. Indiana Nat'l Bank, 605 N.E.2d 746, 752-55 (Ind. 1993), New York courts have not utilized the phrase. There is good reason for this because – at least in New York – the defense does not automatically apply whenever an intended payee receives the proceeds of an improperly paid check. Indeed, in discussing what is elsewhere referred to as the intended payee defense, some New York courts simply speak in terms of "unjust enrichment." See, e.g., Middle States Leasing Corp v. Mfrs. Hanover Trust Co., 404 N.Y.S.2d 846, 848 (N.Y. App. Div. 1st Dep't 1978); Lund v. Chemical Bank, 797 F. Supp. 259, 272 (S.D.N.Y. 1992).

Terminology aside, "as a general rule, a drawer may be precluded from recovering on an improperly paid check where the proceeds actually reached the intended

payee." Streng v. Oldsmobile, Inc. v. Fleet Bank of N.Y., 667 N.Y.S.2d 160, 161 (N.Y. App. Div. 4th Dep't 1997); see also Mouradian v. Astoria Fed. Sav. & Loan, 689 N.E.2d 1385, 1387 (N.Y. 1997). The New York Court of Appeals has explained that "[t]his equitable defense is founded on the concept of unjust enrichment and is based on the view that the drawer should not be permitted to recover from the drawee bank were he has suffered no loss from the improper payment of a check." Tonelli v. Chase Manhattan Bank, N.A., 363 N.E.2d 564, 671 (N.Y. 1977); see also Kosic v. Marine Midland Bank, 430 N.Y.S.2d 175, 177 (N.Y. App. Div. 3d Dep't 1980).

While typically applied to claims by drawers against drawee banks, the defense applies to claims throughout the "stream" of liability. As explained in Atlantic Bank of New York v. Israel Discount Bank, Ltd., where the proceeds of an improperly paid check reach the intended payee, as a general rule:

> [t]he payee cannot sue in conversion since he has suffered no damage – he has, after all, received the monies intended for him. The drawer may not sue the drawee-payor bank for an improper charge on his account because, again, no damage has been suffered as the funds have been put to their proper use. And . . . where the payee has received funds on a check bearing his forged endorsement, the payor bank may not sue the collecting bank for breach of warranty under 4-207. Being immune from suit once the payee has received his funds, the payor bank has suffered no damage from the forgery and hence cannot reap undeserved benefits from the collecting bank.

441 N.Y.S.2d at 317-18; see also Lund, 797 F. Supp. at 272.

According to the Defendants, since Plaintiff intended the proceeds of the two checks to go to Clott, and the proceeds went to Clott, Plaintiff loses. Clott's alteration of the checks is irrelevant, as is the claim that Clott used a false name and misappropriated the $85,000. If Clott received the funds Plaintiff intended him to receive, and since he did, Defendants claim victory. (Mem. in Supp. at 4-7). But Plaintiff points to a flaw in Defendants' argument: the "narrow 'intended payee' exception to the rule of strict

8

liability is available only when the drawer has not suffered a loss, and the banks bear the burden of proving that fact." (Mem. in Opp. at 5). The Complaint alleges that Plaintiff suffered an $85,000 loss, and so Defendants' motion must be denied.

Neither position is entirely correct. Defendants' understanding of the defense is too broad; Plaintiff's, too narrow. The intended payee's receipt of the proceeds of an altered check does not ipso facto immunize banks from liability for improper payment. Nor does a loss by the drawer necessarily preclude banks from avoiding liability when the intended payee has received the proceeds of an altered check. The inquiry is more nuanced.

In Tonelli v. Chase Manhattan Bank, plaintiff drew two checks, each for $100,000, on its account at Chase Manhattan Bank ("Chase") for the purchase of certificates of deposit from Totowa Savings and Loan ("Totowa"). 363 N.E.2d at 565. The checks were made payable to Totowa and, to ensure the proceeds were used as intended, marked "CD". The plaintiff gave the checks to an individual named "Naiman," who was to deliver the checks to Totowa and purchase the CDs. Id. Unbeknownst to the plaintiff, Naiman took one of the $100,000 checks to Chase and asked to exchange it for a cashier's check in the same amount. Id. at 566. While the plaintiff's $100,000 check was not endorsed by Totowa, Chase nevertheless accepted the check, charged plaintiff's account, and issued a $100,000 cashier's check payable to Totowa. Id. Naiman went to Totowa and used the cashier's check – which was not marked "CD" – to open an account in the name of a company he controlled called Playmate. Id.

Naiman's theft was ultimately discovered by the plaintiff, but not before the $100,000 in the Playmate account had been dissipated. Id. The plaintiff filed suit against Chase as drawee bank seeking to recover the proceeds of the improperly paid

9

check.  Id.  After the plaintiff prevailed on a motion for summary judgment and the First Department affirmed, Chase appealed to New York Court of Appeals.  As an initial matter, the Court of Appeals held that since the plaintiff's check was not endorsed by Totowa (the payee), the check was not "properly payable," and Chase breached its duty to the plaintiff by issuing the cashier's check and charging the plaintiff's account.  Id. (citing N.Y. U.C.C. § 4-401).

Unwilling to accept liability, Chase "relie[d] on the principal that a drawer may be precluded from recovering on an improperly paid check where the proceeds of the check actually reached the person intended to receive them."  Id. at 567.  Chase argued that because the cashier's check and plaintiff's original check were both made payable to Totowa, the plaintiff "suffered no loss for which Chase may be held responsible."  Id.  The Court rejected Chase's argument.  Chase's defense was "equitable;" and that defense "is founded on concepts of unjust enrichment and is based on the view that the drawer should not be permitted to recover from the drawee bank where he has suffered no loss from the improper payment of a check."  Id.  According to the Court, Chase's argument "overlook[ed] the nature and function of the cashier's check issued in the exchange."  Id. While the cashier's check was "nominally payable to Totowa," it did not indicate its "origin and purpose," as did the plaintiff's check and "could be utilized for another purpose by its possessor."  Id.  Unlike the plaintiff's check which was marked "CD", the cashier's check "could be deposited to any account at Totowa and when so deposited would become the property of the depositor since a debtor-creditor relationship would arise between Totowa and the depositor."  Id.  According to the Court, this is exactly what happened when Naiman deposited the cashier's check into the Playmate account, "an instrumentality of the thieves."  Id.

The Tonelli Court cited to Hillsley v. State Bank of Albany, 263 N.Y.S.2d 578 (N.Y. App. 1st Dep't 1965) for the position that a drawee bank cannot "rely upon the defense that the . . . [proceeds of an improperly paid check] eventually reached the rightful payee where the proceeds of the check were not applied by the payee for the purpose intended by the drawer." Id. The Court reasoned that "[b]y virtue of the issuance of the cashier's check, the thieves were able to convert the . . . [plaintiff's] money to their own use." Id. As such, "Totowa, the true payee, never actually received the proceeds of the original . . . check for the purpose intended by the drawer." Id. Thus, the Court rejected Chase's defense and affirmed the judgment.

Hillsley bears close examination. Hillsley involved the claim of a payee against a collecting/depository bank for conversion. 263 N.Y.S.2d at 580. The plaintiff was building two houses – the "Mooney house" and "Springwood Manor" – for Glenwood Builders ("Glenwood"). The attorney for the purchasers of the Mooney house drew a $10,000 certified check payable jointly to the plaintiff and Glenwood. Id. "Re: Mooney" was written on the face of the check to indicate that the proceeds were for work done on the Mooney house. Id. Upon receiving the check, Thomas Birmingham (who was apparently an agent or principal of Glenwood) forged the plaintiff's endorsement and deposited the check into Glenwood's account at State Bank of Albany ("State Bank"). Id. When he deposited the forged check, Birmingham had State Bank issue two cashier's checks, totaling $10,000, which he delivered to the plaintiff. Id. The cashier's checks were, however, to be applied to Springwood Manor – not to the Mooney house. Id.

When Springwood Manor was complete, the plaintiff submitted a bill to the purchaser which accounted for the $10,000 he had received via the cashier's checks from Birmingham. Id. The purchaser duly paid the balance to Glenwood. Later, the plaintiff

11

informed the purchaser of the Mooney house that he had not been fully paid for his work. Id. In response, the purchaser said that he had paid Glenwood, and that his payment included the $10,000 check jointly payable to Glenwood and the plaintiff. Id. When the plaintiff saw the $10,000 check, he discovered that his endorsement had been forged. Id.

The plaintiff filed suit against State Bank for conversion based on its payment of the forged $10,000 certified check. Id. Following a bench trial, the plaintiff prevailed and State Bank appealed. Id. at 579. On appeal, State Bank did not challenge the lower court's conclusion that it had converted the funds. Id. at 581. Instead, it relied on a defense "in the nature of credit or set off on the premise that the entire proceeds of the forged instrument were paid to [the plaintiff]." Id. Citing to cases discussing the general rule that receipt of the proceeds of an improperly paid check by the intended payee precludes recovery by the drawer, id. (citing Lynch v. First Nat'l Bank of Jersey City, 13 N.E. 775 (N.Y. 1887); Sundail Const. Co. v. Liberty Bank of Buffalo, 12 N.E.2d 745 (N.Y. 1938); Sweeny v. Nat'l City Bank of Troy, 33 N.Y.S.2d 885 (N.Y. App. Div. 3d Dep't 1942)), the Court stated that "[t]hese cases sustain the principle that recovery on a forged instrument may be defeated by proof that the rightful owner has suffered no damage. An action by the drawer of a check against his bank may be defended by proof that payment was made to the person entitled to it as against the drawer." Id.

The Court explained that the $10,000 certified check was "expressly intended for application to the Mooney house." Id. But "because of the forgery," it was "misapplied to the Springwood Manor house." Id. As a result, "plaintiff lost his right to enforce his mechanic's lien against the Springwood Manor house." Id. The Court also noted that "it appears that there was due the plaintiff at the commencement of this action in excess of $17,000 on the Mooney house." Id. After reiterating that "[t]he defense is of an

equitable nature and requires proof of the absence of damages on the part of the plaintiff," the Court affirmed the judgment for the plaintiff.  Id.

Relying on Tonelli and Hillsley, Plaintiff argues that strict liability for an improperly paid check can only be avoided when the payee intended by the drawer receives the proceeds *and* the drawer does not suffer a loss.  (Mem. in Opp. at 5-7).  Defendants' attempt to distinguish Tonnelli because the check there was unendorsed and therefore not "properly payable," while Plaintiff's checks to Clott were endorsed and therefore "properly payable as a matter of law."  (Reply Mem. at 4).

The Complaint alleges that Clott altered Plaintiff's two checks by adding his surname and that the alterations were "clearly apparent."  (Compl. ¶ 17).  A materially altered check is not properly payable.  See Biltmore Assocs., 578 N.Y.S.2d at 799; CNA Holdings, 782 N.Y.S.2d at 15-16.  Since the Court must accept the allegations in the Complaint as true, Defendants' attempt to distinguish Tonnelli is off-target.  Defendants' attempt to differentiate Hillsley by pointing out that it involved the claim of a payee as opposed to a drawer.  (Reply Mem. at 3).  This distinction cannot be controlling, however, inasmuch as the New York Court of Appeals expressly relied on Hillsley in Tonelli which did involve the claim of a drawer.  See Tonelli, 363 N.E.2d at 567.

Defendants also argue – with substantially more force – that Gotham-Vladimir Advertising, Inc. v. First National City Bank, 277 N.Y.S.2d 719 (N.Y. App. Div. 1st Dep't 1967) disproves Plaintiff's contention that if the drawer suffers a loss, the intended payee defense is unavailable.  According to Defendants, since the plaintiff/drawer in Gotham-Vladimir suffered a loss, and the court nevertheless afforded the defendant/drawee bank the benefit of the defense, Plaintiff's position cannot be correct.  (Reply Mem. at 5-6).  According to Defendants, to the extent Hillsley stands for the

proposition that a loss by the drawer precludes application of the intended payee defense, it "creates an irreconcilable conflict" with Gotham-Vladimir. (Id. at 3). Since Gotham-Vladimir was decided by the same court (the First Department) two years after Hillsley, Defendants contend that Gotham-Vladimir controls. (Id.)[5] But the two cases can be reconciled with each other, and with Tonelli by considering the element of causation.

The plaintiff in Gotham-Vladimir ran an advertising agency with hundreds of affiliates. 227 N.Y.S.2d at 721. One affiliate, located in Puerto Rico, was "Clark Associates." Id. The plaintiff's president – "Kron" – and the principal of Clark Associates – "Mr. Clark" – formed a corporation named Clark-Gotham Associates, Inc. ("Clark-Gotham"). Id. The plaintiff owned 51% of Clark-Gotham and Mr. Clark, who was the corporation's president, owned the remaining 49%. Id. After Clark-Gotham was incorporated, the plaintiff drew checks on its accounts at three different banks payable to "Clark-Gotham Associates, Inc." Id. Despite the named payee being Clark-Gotham, most of the checks were endorsed "For deposit, Clark Associates of Puerto Rico." Id. One was endorsed "Clark Associates." And two were not endorsed at all. Id. All of the checks were deposited in Clark Associates' account. Id.

After the checks were deposited in the Clark Associates account, Mr. Clark resigned from his post as president of Clark-Gotham. Id. The plaintiff subsequently learned that Mr. Clark had overdrawn his salary and that Clark-Gotham was deeply in debt. Id. at 722. After paying Clark-Gotham's debt, the plaintiff filed suit against three drawee banks claiming that "the several checks were unlawfully paid . . . to Clark Associates although they were not entitled to receive the same." Id. (internal citations

---

[5] Defendants overlook the fact that the New York Court of Appeals expressly relied on Hillsley in Tonelli, which was decided ten years after Gotham-Vladimir. Tonnelli, however, also cited favorably to Gotham-Vladimir. See Tonnelli, 363 N.E.2d at 567.

14

and quotation marks omitted). The trial court entered a directed verdict in the plaintiff's favor, finding that "each of the checks bore an improper and unauthorized indorsement which was wholly inoperative and the respective defendants had no right to charge the accounts of plaintiff with the amounts thereof." Id. The drawee banks appealed.

The First Department began its analysis by noting that payments made "on forged or unauthorized indorsements are at the peril of the bank unless it can claim protection upon some principle of estoppel." Id. The court explained, however, that "[i]t is generally held . . . that a drawer is precluded from recovering from the drawee bank for paying his check on a forged or unauthorized indorsement where the proceeds of the check actually reach the person whom the drawer intended to reach them." Id. This rule, according to the court, is designed "to prevent the depositor from being unjustly enriched by collecting from his creditor-bank the sum which has, in fact, reached the payee to whom the depositor intended." Id. (quoting Sweeny, 33 N.Y.S.2d at 890 (Schenck, J., concurring)). Citing to Hillsley the court noted that "it has elsewhere been suggested that in such event the drawer would not suffer any financial loss or be damaged because of the payment on the forged or improper indorsement." Id.

The evidence from trial showed that Clark-Gotham never had its own bank account, and that "without objection from plaintiff . . . . [Mr.] Clark used the bank account of Clark Associates as a depository of the funds of Clark-Gotham and plaintiff's checks payable to Clark-Gotham were deposited therein." Id. at 722-23. Kron and the plaintiff's treasurer testified that Clark-Gotham was the intended payee of the checks and that the proceeds of the checks were received in to its general funds. Id. at 723. Despite the plaintiff's loss, the court concluded that because Clark-Gotham had received the

15

proceeds of the checks, the drawee banks could not be held liable for improper payment. Id. The Court held:

> In sum, if plaintiff has been damaged, it failed to prove that such damage was caused by the improper indorsements on the checks. Its officers conceded that that the funds were received by the named payee (Clark-Gotham) and became part of its corporate funds. If plaintiff sustained a loss it was due to its negligence in not requiring Clark-Gotham to establish a separate bank account with adequate supervision by plaintiff as the majority stockholder.

Id.

In Tonnelli, Hillsley and Gotham-Vladimir the intended payee received the proceeds of the improperly paid checks, and in all three cases the plaintiff suffered a loss. In Gotham-Vladimir the bank escaped liability; the banks in Tonnelli and Hillsley did not. In Gotham-Vladimir, however, the bank's improper payment of the check was not a substantial factor in causing the plaintiff's harm; but in Tonelli and Hillsely the improper payments were. Even if the bank had rejected the improperly endorsed checks in Gotham-Vladimir, the drawer would still have provided the funds to the intended payee and been harmed. In Tonnelli and Hillsley, on the other hand, without the banks' improper payment of the checks, the plaintiff would not have suffered a loss. Had the drawee bank in Tonnelli not exchanged the plaintiff's unendorsed check for a cashier's check, the proceeds would have been applied by the intended payee for the purpose intended by the plaintiff. Had the depository bank in Hillsley not accepted the check bearing the plaintiff's forged signature, the proceeds of the check would have been applied as intended by the drawer. In both cases, the plaintiff's loss would have been avoided.

This causation requirement is made clear by Conder v. Union Planters Bank, N.A., 384 F.3d 397 (7th Cir. 2004), a case relied upon by Defendants. The plaintiff in

Conder was the victim of a Ponzi scheme. Id. at 398. A check she wrote to the scheme's perpetrator was improperly endorsed, but nevertheless accepted by the defendant bank and paid to an entity controlled by the Ponzi operator. Id. Circuit Judge Posner explained that the "intended payee rule" provides,

> that if a bank transfers a check without a proper endorsement but the transfer is to a person whom the drawer of the check wanted (or would if consulted have wanted) to have the money, the bank is not liable for any loss the drawer may have suffered as a result of the transfer, since the transfer would have gone through even if the bank had insisted that the check be properly endorsed.

Id. at 401. Finding the defense applicable, the Seventh Circuit affirmed the district court's dismissal of the complaint. Even if the bank had noticed the improper endorsements, it would have returned the checks to the Ponzi operator who would simply have properly endorsed the checks. Id. at 401. "So the plaintiff would have lost her money all the same, and is therefore no worse off because of the bank's mistake." Id.

Defendants claim Conder in their favor. (Reply Mem. at 1-2). Since plaintiff in Conder "obviously suffered a loss, but the loss suffered was not attributable to the checks, but rather was a loss fraudulently induced by the ponzi scheme 'malefactors.'" (Id. at 2). Defendants liken the case to Plaintiff's and argue that "Plaintiff's loss was similarly caused due to the fraudulent inducement by 'Michael Howard' to pay money to 'Michael Howard.'" (Id.) Defendants' view of the causation requirement is, however, too restricted.

Plaintiff's loss was not simply "due to the fraudulent inducement" of Michael Howard Clott. Based on the allegations in the Complaint, had Defendants not accepted the altered checks, Plaintiff would not have lost the $85,000. Unlike Conder and Gotham-Vladimir – where "the transfer would have gone through even if the bank had insisted that the check be properly endorsed," Conder, 384 F.3d at 401 – without

17

Defendants improper payment of Plaintiff's checks, Clott's scheme would have been foiled. Had Defendants refused to accept the materially altered checks, Clott would not have received the $85,000, and Plaintiff's loss would have been avoided. Indeed, if Defendants' proffered understanding of the rule was accurate, the plaintiffs' claims in Tonnelli and Hillsley should have been dismissed. In both cases the loss was certainly "caused" – at least in part – by fraud. But the focus of the intended payee rule is not on the acts of the intended payee or third-parties, instead in Tonnelli, Hillsley, Gotham-Vladimir and Conder the focus is on the extent to which the improper payment of the check contributed to the loss suffered by the plaintiff – even if the originating cause of the loss is the intended payee or a third-party. Here, the improper payment was a substantial factor in causing plaintiff's loss, and therefore Defendants cannot avoid liability – at least on the well-pleaded facts alleged in the Complaint – based on the intended payee defense. The Defendants' Rule 12(c) motion for judgment on the pleadings is denied.[6]

---

[6] In their reply, Defendants rely on the "imposter rule" set forth in N.Y. U.C.C. § 3-405(a)(1). (Reply Mem. at 7). They say the rule shows that where a drawer is fraudulently induced to draw a check to a swindler, the drawer – not the drawee bank – should bear the loss. (Id. at 7-8). Pursuant to the imposter rule, "a forged indorsement is effective 'if an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee.'" Pellicio v. Hartford Ins. Co., 691 N.Y.S.2d 554, 555 (N.Y. App. Div. 2d Dep't 1999) (quoting § 3-405(a)(1)). Plaintiff does not, however, complain of a forged endorsement and therefore, by its terms, the imposter rule does not apply. See Hanover Ins. Cos. V. Brotherhood State Bank, 482 F. Supp. 501, 508 (D. Kan. 1979) (where payee's name altered § 3-405 "is not applicable on its face and the negligence of the bank in paying patently altered items precludes extending the statute's application for reasons of policy."). Moreover, the Complaint alleges that Clott's alteration to the two checks was "clearly apparent." (Compl. ¶ 17). In construing § 3-405, the New York Court of Appeals has explained that "if a check is tainted in *some other way* which would put the drawee on notice, and would make its payment unauthorized, a drawee bank may yet be held liable." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank, 442 N.E.2d 1253, 1258 (N.Y. 1982) (internal citation and quotation marks omitted). In any event, the intended payee defense is "equitable defense is founded on the concept of unjust enrichment." Tonnelli, 363 N.E.2d at 671. Based on the facts alleged, it cannot be said that it would be inequitable to hold Defendants liable or that imposing liability would unjustly enrich Plaintiff.

## Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings is DENIED. The Clerk of Court is directed to close the motion at docket number 17.

Dated: New York, New York
      September 16, 2010

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge